**The PEOPLE of the State of Colorado, Complainant,**

v.

**Robert L. BEALMEAR, Attorney-Respondent.**

**No. 82SA527.**

Supreme Court of Colorado, En Banc.

Dec. 13, 1982.

Linda Donnelly, Disciplinary Pros., Denver, for complainant.

Robert L. Bealmear, Denver, pro se.

ERICKSON, Justice.

This disciplinary proceeding has been presented to us in the form of a Stipulation, Agreement and Conditional Admission of Misconduct. The respondent, Robert L. Bealmear, has agreed that the Stipulation, Agreement and Conditional Admission of Misconduct, which includes an admission that disbarment is the proper sanction, may be made public if it is approved by this Court. We accept and approve the Stipulation, Agreement and Conditional Admission of Misconduct, and order that the respondent be disbarred and that he be prohibited from applying for readmission for eight years. The respondent is ordered to pay costs in the amount of $266.40 to the Grievance Committee of this Court within one year.

■ The respondent was admitted to the bar of the Colorado Supreme Court on October 2, 1973, and is registered as an attorney upon the official records of the Colorado Supreme Court. (Registration No. 3880). The respondent has admitted that he misappropriated trust funds which he held for his clients and that he misrepresented facts to his clients relating to litigation that was entrusted to him. Three of the complaints which brought him before the Grievance Committee involve misappropriation and conversion of his clients' funds. In each instance, the respondent attempted to mislead his clients by denying that he had received funds on their behalf and by misleading them as to the status of their litigation.

I.

In 1975, Angelica Renteria retained the respondent to represent her in the resolution of certain legal problems associated with the death of her mother. At the time of her mother's death in 1975, Angelica Renteria was seventeen years of age. The respondent agreed to assist her in collecting a $6,700 life insurance policy from the Western Preferred Insurance Co. Angelica Renteria was the named beneficiary in the policy. The respondent told her that she could not collect the money until she became twenty-one years of age, which was a false statement, but one which his client accepted as true. When Angelica Renteria attained the age of twenty-one, she contacted the respondent to obtain the life insurance proceeds. The respondent told her that the insurance company would not cooperate and that it would be necessary to sue the insurance commissioner in order to recover the benefits under the policy. The respondent admits now that he made a

claim for the life insurance proceeds in 1975 and received a check for $6,719.04 which he endorsed and converted to his own use.

In 1979, Angelica Renteria obtained the services of another lawyer to represent her in an effort to secure the proceeds from the life insurance policy. After a full investigation, her lawyer discovered the conversion and demanded a settlement for his client. On July 12, 1979, the respondent delivered a $15,000 check to settle the claims of Angelica Renteria. Part of the settlement agreement required that the respondent report the incident to the Grievance Committee of the Colorado Supreme Court. The respondent advised his client's lawyer that the report had been made, when in fact it had not been made.

The respondent's conduct violates C.R. C.P. 241.6 relating to the discipline of attorneys, and the Code of Professional Responsibility, DR 1–102(A)(1), (2), (3), (4), (5) and (6);[1] DR 9–102(B)(1), (2), (3), and (4).[2] The acts committed by the respondent are contrary to high standards of honesty, justice, and morality required of lawyers. C.R.C.P. 241.6. The misrepresentations which the respondent made to his client were designed to hide the conversion of his client's funds to his own use. The misappropriation of his client's funds, coupled with the fraud and deceit tied to his attempts to postpone discovery of his defalcations, becomes even more reprehensible when we take into account the means which the respondent employed to obtain the $15,000 to effect a settlement with Angelica Renteria. The respondent obtained the $15,000 by misappropriating trust funds from the estate of Leone Mitchell.

## II.

From 1979 to 1981, the respondent was in partnership with another lawyer. The firm represented the estate of Leone Mitchell. The firm maintained a trust account in which estate funds were deposited. As of July 6, 1979, the amount in trust for the estate was $17,387.19.[3] On July 12, 1979, the respondent drew a check for $15,000 against the firm trust account to settle Angelica Renteria's claim. The withdrawal was unauthorized and constituted a misappropriation of funds from the estate of Leone Mitchell. The funds were used to reimburse Angelica Renteria for the proceeds of a life insurance policy which he had converted to his own use. His conduct in misappropriating funds from the estate of Leone Mitchell is particularly blameworthy because it represents the misappropriation of funds to reimburse a former client for yet another unlawful taking of funds which he received in a fiduciary capacity as a lawyer.

The respondent's violations of the Code of Professional Responsibility and the Disciplinary Rules were set out in our discussion of the claim of Angelica Renteria and need not be repeated. The respondent's professional misconduct is to be condemned as a fla-

1. "DR 1–101 *Misconduct.*

    (A) A lawyer shall not:
    (1) Violate a Disciplinary Rule.
    (2) Circumvent a Disciplinary Rule through actions of another.
    (3) Engage in illegal conduct involving moral turpitude.
    (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
    (5) Engage in conduct that is prejudicial to the administration of justice.
    (6) Engage in any other conduct that adversely reflects on his fitness to practice law."

2. DR 9–102(B)

    "A lawyer shall:
    (1) Promptly notify a client of the receipt of his funds, securities, or other properties.

    (2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
    (3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
    (4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

3. The total amount in the partnership trust account for all of the firm's clients was $21,-119.37.

grant example of a lawyer's use of his role as an officer of the court to convert funds which he obtained in a fiduciary capacity to his own use.

## III.

In 1975, the respondent was retained by Dorothy L. Hunter to collect unpaid child support by garnishing her ex-husband's wages. His client had a substantial claim for past due child support which had been hotly contested. In early 1980, the respondent and his client discussed a fee for his services and, according to the client, agreed upon a flat fee of $1,500. The respondent apparently claims that he was entitled to one-half of any amount which he collected and was to be paid for his services on an hourly basis.

The garnishment resulted in a series of payments into the registry of the Denver District Court. On April 21, 1980, the respondent received a disbursement of $1,294 and on May 12, 1980, he received an additional $538.19 on behalf of his client. Thereafter, he lied to his client and said that he had not received a disbursement since January of 1980. When his client discovered the falsity of the respondent's statements, she demanded $700 which the respondent paid on June 17, 1980. On June 25, 1980, the respondent met with his client and directed her to sign an "Order for Assignment of Earnings" and a power of attorney which authorized him to endorse checks on her behalf. The order for assignment was not entered until July 30, 1980, but during the interim period, the respondent received two checks; one for $259.07 and the other for $575.72. He deposited the checks to his account on June 25, 1980, and on July 30, 1980, but did not advise his client of the receipt of either check.

Thereafter, on September 30, 1980, he received an additional $756.11 which he deposited to his account. On October 20, 1980, the respondent wrote his client and itemized the time which he had spent in collecting child support payments on her behalf, but failed to disclose the funds which he had received on her behalf.

Thereafter, his client wrote and itemized payments that she knew about from an examination of the court records and demanded what she believed was her share of the proceeds. The respondent did not reply to her letter and continued to deposit funds in his own account, including $756.11 which he received on October 31, 1980.

Dorothy Hunter then obtained new counsel and demanded an accounting. She also revoked her power of attorney on November 8, 1980, but the respondent ignored the revocation and endorsed two more checks in November and December, 1980 for deposit to his own account. Both checks were in the amount of $756.11. The records reflect that the respondent received a total $6,665.07 on behalf of Dorothy L. Hunter. He paid her a total of $1,035. When the Grievance Committee investigated the Hunter complaint, the respondent declared that there was a fee dispute. He asserted that he had not agreed to a flat fee of $1,500, as his client claimed, but had undertaken representation on an hourly basis. The investigator was told that all of the funds were deposited in the trust account and were intact. Subsequently, the investigation disclosed that the respondent had dissipated the funds immediately after they were received.

Respondent's conduct violates C.R.C.P. 241.6 and the Code of Professional Responsibility, DR 1–102(A)(3), (4), (5) and (6) (see supra note 1); DR 7–101(A)(3) (prejudicing or damaging a client in the course of professional representation); DR 9–102(B)(4).

## IV.

The remaining claims which were filed by Gordon Rolofson, Carol Ann Bliven, and Julie Findlay involve the acceptance of fees after the respondent was suspended by this Court from the further practice of law and his failure to notify his clients of his suspension. The respondent admits that his conduct violates C.R.C.P. 241.6 and former C.R.C.P. 255 relating to the discipline of attorneys. His conduct also contravenes the Code of Professional Responsibility and DR 1–102(A)(5) and (6) (conduct prejudicial

to the administration of justice which adversely reflects upon the respondent's fitness to practice law); and DR 3–101(B) (practicing law when in violation of the rules of this Court).

## V.

 In our view, the most severe sanctions are required when a lawyer disregards his professional obligations and converts his clients' funds to his own use. *People v. Kluver,* 199 Colo. 511, 611 P.2d 971 (1980); *People v. Harthun,* 197 Colo. 1, 593 P.2d 324 (1979). Misappropriation of funds, failure to account, and the respondent's deceit, and fraud in handling the affairs of his client necessitate that he be disbarred and that the Stipulation, Agreement and Conditional Admission of Misconduct be made public in accordance with the respondent's stipulation. The Clerk of the Supreme Court is also directed to provide the District Attorney for the Second Judicial District with a copy of this opinion and the Stipulation, Agreement and Conditional Admission of Misconduct which was filed in this case.

Accordingly, the respondent is disbarred and the Clerk of the Supreme Court is ordered to strike his name from the roll of lawyers authorized to practice before this Court. The respondent is not permitted to apply for readmission for a period of eight years and is ordered to pay costs in the amount of $266.40 to the Grievance Committee of the Supreme Court, 190 East 9th Avenue, No. 440, Denver, Colorado 80203, within one year from the date of the announcement of this opinion.